IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| BOBBY FRANCIS LOWRY,<br><br>          Plaintiff,<br><br>     vs.<br><br>CAPTAIN BRAGG AND SHERIFF LEO DUTTON,<br><br>          Defendants. | CV-22-23-H-JTJ<br><br><br>ORDER |

Defendants' have moved for summary judgment. (Doc. 66.) The motion is fully briefed and will be granted. Plaintiff Bobby Francis Lowry failed to exhaust his administrative remedies.

## I. BACKGROUND

Lowry filed a Complaint[1] on April 1, 2022, alleging negligence and medical care claims, including related to getting his medical care paid for. (Doc. 2.) At the time, Lowry was an inmate at Lewis and Clark County Detention Center

---

[1] In their briefing, Defendants refer to this document as Lowry's (first) Amended Complaint. (Doc. 67 at 3 et seq.) The document was Lowry's initial filing with the Court, for which he used a court form that is captioned "Amended Complaint." (Doc. 2.) The Court never considered this an amended pleading and did its initial screening of the pleading as though it were an original complaint. For those reasons, in this Order, the Court will refer only to a Complaint and an Amended Complaint.

("LCCDC"). The Court screened his Complaint, pursuant to 28 U.S.C. §1915, and determined that it failed to state a claim for various reasons. Lowry was permitted to amend and filed his Amended Complaint on May 20, 2022. (Doc. 7.)

The Court inadvertently ordered service of the original Complaint, which has caused a cascade of confusion. (Doc. 6.) The Court never screened Lowry's Amended Complaint before it was answered by Defendants Captain Bragg and Leo Dutton. (Doc. 10.) The Amended Complaint also named the Lewis and Clark County Sheriff's Office. Out of an abundance of caution, Defendants also answered Lowry's original Complaint, because the two Complaints were not identical, and Defendants did not want to waive any argument if there was confusion about which Complaint was operative. (Doc. 67 at 7.)

As stated in its screening Order, the Court considers the Amended Complaint the operative Complaint, and it replaces any prior pleading. (Doc. 4 at 13.) In it, Lowry added as a defendant Lewis and Clark County Sheriff's Office. (Doc. 7 at 3.) The allegations of Lowry's Amended Complaint are that Defendants did not pay for his seizure medication, in violation of Lowry's Eighth Amendment right to medical care. (Doc. 7 at 3.) Instead, it is the policy of defendants to require Lowry to pay for his medicine, pursuant to Montana state law. (Doc. 7 at 5.) Specifically, Lowry asserts that Defendant Bragg is enforcing a policy created by Defendant Dutton after Lowry's entry into LCCDC. (Doc. 7 at 5.)

2

Lowry sought both injunctive relief and damages. He asked the Court to enjoin defendants from charging him for medical care, and to direct Defendants to provide him medical care cost-free. (Doc.7 at 5.) The Court notes that, according to publicly available detention center records, Lowry is no longer held at LCCDC. He also sought compensation for pain and suffering. *Id*.

The parties dispute which claims are at play and which Complaint is operative. Defendants contend that Lowry stated at his deposition that he was not pursuing the claims in his Amended Complaint, the pleading filed on May 20, 2022. (Doc. 67 at 7.) At his deposition, Defendants' counsel asked him which claims he was pursuing and showed him a copy of the May 20th Amended Complaint. After reviewing it, Lowry stated, "This is the incorrect lawsuit. This is the second one that I moved to have dismissed already. I had that one dismissed." (Doc. 68-4 at 3: (Dep. B. Lowry (May 25, 2023) 6:21 – 8:24; 24:17-25:17.) Discussion ensued, in which Lowry looked at the original Complaint and stated that it was the one he was pursuing, "related to [his] seizure in coming off a bunk and injuring [himself], and the subsequent medical care and their lack of [sic]." *Id.*, at 10:23 – 25. There is some additional back and forth in the deposition about which Complaint, in this lawsuit, contains Lowry's claims.

Lowry's confusion likely arises from the fact that, since 2021, Lowry has filed seven lawsuits in the District of Montana. (He has filed eleven lawsuits and

3

seven habeas petitions altogether in the District since 2017.) Several have been dismissed for failure to state a claim. He did voluntarily dismiss one, after Judge Haddon denied his motion to proceed in forma pauperis. *Lowry v. Bragg and Hawthorne*, CV 22-66-H-SEH. The Complaint in that matter was never served. The claims there related to similar issues as his Amended Complaint here, i.e., payment for and provision of medical care. Lowry attached a grievance to that Complaint that specifically refers to the issue of falling off the bunk and ensuing medical care. (Doc. 2-1 at 5.) That case was dismissed on September 26, 2022.

In his deposition, Lowry acknowledged that he had dismissed one of his cases, but then he says "I'm just saying that both those issues, even if they are two separate lawsuits, are the same thing, because I was—I still have not been treated for the injuries that I received. For two and a half years I've been left untreated." 12:23 – 13:3.

Setting Lowry's pro se status aside, what his Complaint in this case says does matter, because the Complaint sets the stage for the litigation. The Court concluded that his original Complaint failed to state a claim and directed amendment. (Doc. 4.) Despite some loose language in the Court's prior Orders that may have led to confusion, the operative Complaint in this matter is the Amended Complaint of May 20, 2022. Lowry did not move to further amend his Amended Complaint; thus it remains the operative complaint, regardless of what he may

4

have said in his deposition. His claims are only those contained in that Amended Complaint.

## II. ANALYSIS

### A. Standard for Summary Judgment

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A material fact is one that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden, the non-moving party must go beyond the pleadings and designate by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Id*. The Court views the evidence in the light most favorable to the nonmoving party and draws all justifiable inferences in the non-moving party's favor when deciding a motion for summary judgment. *Id*. at 255

5

(1986); *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

### B.  Exhaustion

Defendants assert they are entitled to summary judgment because Lowry failed to exhaust his administrative remedies prior to filing a lawsuit. (Doc. 67 at 8.) Lowry responds that he has "has exhausted all available administrative remedies. Dozens of times over." (Doc. 85 at 10.) The record does not support Lowry's assertion.

The Prison Litigation Reform Act ("PLRA")'s exhaustion requirement states:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524-25 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 93 - 97 (2006). Exhaustion is mandatory. *Booth*, 532 U.S. at 741; *Jones v. Bock*, 549 U.S. 199, 211 (2007). "Exhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim." *Albino v. Baca*, 747 F.3d

6

1162, 1170 (9th Cir. 2014). As such, the Court will analyze the failure to exhaust defense first.

The defendant bears the burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). The prisoner must produce evidence demonstrating that "the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (internal citations and quotation marks omitted).

"The ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake*, 578 U.S. 632, 642 (2016) (citing *Booth*, 532 U.S., at 737–738.) Therefore, inmates must exhaust those "grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* (quoting *Booth*, 532 U.S., at 738.)

7

There are three general situations that can render a prison or jail grievance process unavailable to an inmate. First, an administrative procedure is not available, and therefore need not be exhausted, "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 578 U.S., at 643.

Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* "When rules are so confusing that no reasonable prisoner can use them, then they're no longer available." *Id.* (internal quotation marks and alteration omitted). However, the procedures need not be sufficiently "plain" as to preclude any reasonable mistake or debate with respect to their meaning.  *Id.*  Therefore, when an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion.  *Id.*

Finally, administrative remedies will be deemed unavailable if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation" or if administrators otherwise interfere with an inmate's pursuit of relief. *Id.*, at 644. For example, if the prison improperly processed an inmate's grievance, if prison officials

8

misinformed an inmate regarding grievance procedures, or if the inmate "did not have access to the necessary grievance forms within the prison's time limits for filing the grievance," the remedies will be considered unavailable. *Albino*, 747 F.3d at 1172-73; *see also McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015) (holding that an inmate's fear of retaliation may suffice to render the grievance process unavailable, if the prisoner (1) "provide[s] a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance," and (2) "demonstrate[s] that his belief was objectively reasonable").

Under the PLRA, prison regulations define the exhaustion requirements. *Jones*, 549 U.S. at 218. LCCDC has a grievance procedure, a copy of which is given to all inmates. (Docs. 68 at 3; 68-1(Aff. Bragg) at 2; and 68-5.) Lowry disagrees with this assertion, stating that since Captain Bragg was not the administrator of LCCDC at the time of Lowry's intake in March, 2021, he cannot state that the policy existed. (Doc. 86 at 5.) However, Lowry's Amended Complaint states that there was a grievance procedure at LCCDC, and that he used it. (Doc. 7 at 6 – 7.) Lowry then asserts that the grievance policy is "next to non-existent and grievances go unanswered for months, even years. As well no grievance appeal existed on the inmate kiosk in 2021, 2022, 2023, or 2024…." (Doc. 86 at 5.)

Defendants submitted a copy of the LCCDC inmate handbook with Captain Bragg's affidavit. (Doc. 68-5.) The policy describes the levels of appeal, including, ultimately, the final appeal to the Detention Captain, who, in this case, is Defendant Bragg. (Doc. 68-5 at 3.) The fact that Bragg was not the captain at the time of Lowry's arrival at LCCDC does not undermine his capacity to testify via sworn affidavit that the policy existed. The Court concludes that LCCDC had a grievance procedure.

More importantly, the policy explains what to do in case of technological failure. If the kiosk or tablet is not working, "the resident may handwrite his/her complaint on a Grievance Form and hand it to detention staff." Lowry's assertion that there is no or has never been a grievance appeal on the kiosk does not excuse his failure to appeal. He had a means to do so and simply did not.

Defendants have established that a grievance policy existed. Lowry has variously denied that it existed, or that he was able to complete it—"Tried no answer." (Doc. 7 at 6.) But Lowry has not carried his burden of "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). The prisoner must produce evidence demonstrating that "the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Williams v. Paramo*, 775 F.3d 1182,

10

1191 (9th Cir. 2015) (internal citations and quotation marks omitted). Lowry has

failed to carry his burden.

### III.  CONCLUSION

Lowry did file grievances. He has included some with his filings. But he

never completed the administrative process. The policy makes clear that failure to

comply will result in a failure to exhaust, and remedies must be exhausted before

seeking judicial action. (Doc. 68-5 at 3.) Exhaustion is mandatory. Defendants are

entitled to summary judgment.

Based on the foregoing, the Court enters the following:

### ORDER

1.  Defendants' motion for summary judgment is **GRANTED**. The Clerk of

Court is directed to close this matter and enter judgment pursuant to Fed. R. Civ. P.

58.

2.  All other pending motions are **DENIED** as moot.

3.  The Clerk of Court is directed to have the docket reflect that the Court

certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure

that any appeal of this decision would not be taken in good faith.

DATED this 18th day of April, 2024.

John Johnston
United States Magistrate Judge